Gregory K. Nelson (SBN 203029)
nelson@weeksnelson.com
Gregory N. Suhr (SBN 328967)
Gsuhr@weeksnelson.com
Ariel N. Redfern (SBN 341314)
Ariel@weeksnelson.com
WEEKS NELSON
16236 San Dieguito Rd, Suite 5-23
P.O. Box 675963
Rancho Santa Fe, CA 92067
Telephone: (858) 794-2140

John Mejia (*pro hac vice pending*)
John.mejia@chrisjen.com
CHRISTENSEN & JENSEN, P.C.
257 East 200 South, Suite 1100
Salt Lake City, UT 84111
Telephone: 801-524-9383

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| N.C., individually and on behalf of J.C., and J.C., | Case No. |
| Plaintiffs, | COMPLAINT FOR DAMAGES |
| v. | |
| BLUE CROSS OF CALIFORNIA dba ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY, an independent licensee of the BLUE CROSS BLUE SHIELD ASSOCIATION; EXPERIAN INFORMATION SOLUTIONS, INC.; and EXPERIAN INFORMATION SOLUTIONS, INC. HEALTH AND WELFARE PPO PLAN, | |
| Defendants. | |

Plaintiffs N.C., individually and on behalf of J.C., and J.C., by and through counsel of record, hereby complain against Defendants, alleging in the totality and alternatively as follows:

## INTRODUCTION

N.C. was a participant in a health plan sponsored by their employer, and enrolled their dependent, J.C., as a beneficiary. As a minor, J.C. received about three months of treatment at Elements Wilderness Program ("Elements"), an outdoor behavioral health provider. Defendants denied payment for any of the treatment J.C. received at Elements. As a result of Defendants' denial, Plaintiffs incurred over $59,000 in medical expenses. The Defendants' grounds for denial of treatment was generalized claim that "wilderness therapy" was not a covered benefit, a claim inconsistent with the Plan. Because Defendants' denial of benefits was inconsistent with the Plan, Plaintiffs bring this action to recover benefits owed to them by Defendants and any other appropriate relief.

## PARTIES, JURISDICTION, AND VENUE

1.     Plaintiffs N.C., and their child, J.C. are residents of Marin County, California.

2.     This case involves mental health treatment and other confidential medical and mental health information. J.C. was a minor at the time of treatment at issue herein. Using the Plaintiffs' full names and surnames would tend to render them identifiable and would intrude upon private health care matters including matters protected by HIPAA. Plaintiffs will file a motion for leave to continue under these initials.

3.     Plaintiffs incorporate herein the medical records and claim-related documentation previously exchanged between them and the Defendants.

4.     Defendant Blue Cross of California dba Anthem Blue Cross Life and Health Insurance Company, an independent licensee of the Blue Cross Blue Shield Association ("Anthem") was the Claims Administrator of a health care plan of which the Plaintiffs were, at all relevant times, insureds and/or beneficiaries.

5.     Based upon information and belief, Plaintiffs allege that Anthem is a California Corporation with a principal address in Woodland Hills, Los Angeles County, California.

6.     Experian Information Solutions, Inc. ("Experian") was, at all times relevant hereto, N.C.'s employer.

7.     Through their employment, N.C. was, at all relevant times, a participant in the Experian Information Solutions, Inc. Health and Welfare PPO Plan (the "Plan").  J.C. is N.C.'s dependent and was, at all times relevant hereto, a beneficiary enrolled in the Plan.

8.     Experian was the Plan Sponsor and Plan Administrator. The Plan was self-funded by Experian.

9.     The Plan was a welfare benefits plan under 29 U.S.C. § 1001 *et. seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA").

10.     Experian and the Plan contracted with Anthem to determine and pay claims and is a fiduciary of the Plan as defined by ERISA.

COMPLAINT

11.     Plaintiffs bring this lawsuit to obtain an order requiring Anthem to pay or reimburse expenses incurred during J.C.'s treatment at Elements. The remedies Plaintiffs seek under ERISA and the Plan are for benefits due under the terms of the Plan and pursuant to 29 U.S.C. § 1132(a)(1)(B); for appropriate equitable relief under 29 U.S.C. § 1132(a)(3) based on Defendants' violation of the Mental Health Parity and Addiction Equity Act of 2008 (the "MHPAEA"); an award of pre-judgment interest; and an award of fees and costs pursuant to 29 U.S.C. § 1132(g).

12.     The Court has jurisdiction over this case under 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

13.     Venue is appropriate under 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(c) based on ERISA's provisions regarding nationwide service of process and venue and the location of the Plan.

**FACTUAL ALLEGATIONS**

14.     Unless otherwise noted, the information supporting these allegations is contained within the record compiled during the administrative process ("Administrative Record").

15.     The Administrative Record, as that term is used in ERISA actions, is incorporated in this Complaint by reference.

16.     Defendants owed Plaintiffs statutory, regulatory, and fiduciary duties to advise Plaintiff of any additional information needed to pursue appeals from the denial of benefits and perfect claims described herein. The Administrative Record can and should

be supplemented with any additional information or documentation from Plaintiffs that should have been requested or identified by Defendants during the administrative process.

### *Allegations regarding the Plan*

17.     Defendants issued, or caused to be issued, a summary plan description booklet entitled *2022 Benefits Summary Plan Description*, effective January 1, 2022 (the "SPD Booklet").

18.     The SPD Booklet states that benefits under the plan are available to employees of Experian. By statute and function, Experian was a fiduciary as defined by ERISA with respect to Plaintiffs' claims for benefits.

19.     Experian contracted with Anthem to be its service representative to handle day-to-day administration of the Plan.

20.     Experian delegated its responsibilities for administrative functions relating to the Plan to Anthem.

21.     Experian appointed Anthem to act as its delegee and agent to answer benefit questions, make benefit decisions, pay claims, and process benefit claims and appeals related to the Plan.

22.     Upon information and belief, Anthem was the Claims Administrator of the Plan. Anthem also provided the medical network for the Plan.

23.     Plaintiffs' Plan with Anthem was a PPO that offered out-of-network benefits.

24.     The Plan defined "Medically Necessary" as follows:

Medically Necessary

Procedures, supplies, equipment or services that are considered to be:

- Appropriate and necessary for the diagnosis or treatment of the medical condition;
- Provided for the diagnosis or direct care and treatment of the medical condition;
- Within standards of good medical practice within the organized medical community;
- Not primarily for your convenience, or for the convenience of your physician or another provider;
- Not costlier than an equivalent service or sequence of services that is medically appropriate and is likely to produce equivalent therapeutic or diagnostic results in regard to the diagnosis or treatment of the patient's illness, injury, or condition; and
- The most appropriate procedure, supply, equipment or service which can safely be provided. The most appropriate procedure, supply, equipment or service must satisfy the following requirements:
  - o There must be valid scientific evidence demonstrating that the expected health benefits from the procedure, supply, equipment or service are clinically significant and produce a greater likelihood of benefit, without a disproportionately greater risk of harm or complications, for the particular medical condition being treated than other possible alternatives; and
  - o Generally accepted forms of treatment that are less invasive have been tried and found to be ineffective or are otherwise unsuitable; and
  - o For hospital stays, acute care as an inpatient is necessary due to the kind of services you are receiving or the severity of the condition, and safe and adequate care cannot be received as an outpatient or in a less intensified medical setting.[1]

25.    The Plan defines "Health Care Provider" as "[a]n organization or institution that delivers health care services, e.g., a doctor, nurse, practitioner, clinic, hospital."[2]

---

[1] SPD Booklet at 303.

[2] *Id*. at 300.

COMPLAINT

26. According to the Plan, medically necessary and covered services rendered by a "non-network" provider could be covered at the in-network benefits under the following circumstances:

> If you are enrolled in Anthem PPO Plan or Anthem HDHP + HSA Plan and if specific covered health services are not available from a network provider, you may be eligible to receive network benefits from a non-network provider. In this situation, you or your physician must contact Anthem in advance of obtaining the covered health services at the toll-free number on your ID card… Authorized covered health services are subject to maximum allowed amounts and covered at the network level.[3]

27. The Plan indicated that in specified circumstances, such services would be covered at the in-network benefit level.

28. The Plan defined "Mental Health Services" as "[c]overed health services for the diagnosis and treatment of Mental illnesses."[4] The Plan defined "Mental Illness" as "[m]ental health or psychiatric diagnostic categories listed in the American Psychiatric Association's DSM."[5]

29. The Plan also provided coverage for "Substance Use Disorder Services," which it defined as "[c]overed health services for the diagnosis and treatment of alcoholism and substance use disorders."[6]

30. The Plan provided the following regarding covered services for mental health treatment:

---

[3] *Id*. at 30.
[4] *Id*. at 303.
[5] *Id*.
[6] SPD Booklet at 309.

Mental or Nervous Disorders includes covered services shown below for the medically necessary treatment of mental or nervous disorders, or to prevent the deterioration of chronic conditions.

- Inpatient hospital services as stated in the "Hospital" provision of this section, services from a residential treatment center, and visits to a day treatment center.
- Partial hospitalization, including intensive outpatient programs and visits to a day treatment center.
- Partial hospitalization is covered as stated in the "Hospital" provision of this section, for outpatient services and supplies.
- Physician visits during a covered inpatient stay.
- Physician visits for outpatient psychotherapy or psychological testing for the treatment of mental or nervous disorders or substance abuse.
- Behavioral health treatment for pervasive developmental disorder or autism. See "Applied Behavioral Analysis (ABA)" on page 76 for a description of the services that are covered.
  Note: You must obtain Utilization Review for all behavioral health treatment services for the treatment of pervasive developmental disorder or autism in order for these services to be covered.
  The Mental Health/Substance Use Utilization Review determines coverage for the inpatient treatment. If an Inpatient Stay is required, it is covered on a Semi-private Room basis.[7]

31.    The Plan provided the following regarding covered services for "Substance use disorder services":

Substance Use includes covered services shown below for the medically necessary treatment of mental or nervous disorders or substance abuse, or to prevent the deterioration of chronic conditions.

- Inpatient hospital services as stated in the "Hospital" provision of this section, services from a residential treatment center, and visits to a day treatment center.
- Physician visits during a covered inpatient stay.
- Physician visits for outpatient psychotherapy or psychological testing for the treatment of mental or nervous disorders or substance abuse.

---

[7] *Id*. at 75.

Treatment for substance abuse does not include smoking cessation programs, nor treatment for nicotine dependency or tobacco use.

The Mental Health/Substance Use Utilization Review determines coverage for the inpatient treatment. If an Inpatient Stay is required, it is covered on a Semi-private Room basis.[8]

32.     The Plan contained a section titled "Exclusions: what the medical plan will not cover."[9]

33.     The Plan's exclusions for "Mental health/substance use disorder" were specified as follows:

Exclusions listed directly below apply to services described under "Mental health services" on page 75, "Neurobiological disorders – mental health services for autism spectrum disorders" on page 76 and/or "Substance use disorder services" on page 85.

- services performed in connection with conditions not classified in the current edition of the Diagnostic and Statistical Manual of the American Psychiatric Association;
- services or supplies for the diagnosis or treatment of Mental Illness, alcoholism or substance use disorders that, in the reasonable judgment of the Mental Health/Substance Use Disorder Administrator, are any of the following:
- not consistent with generally accepted standards of medical practice for the treatment of such conditions;
- not consistent with services backed by credible research soundly demonstrating that the services or supplies will have a measurable and beneficial health outcome, and therefore considered experimental;
- not consistent with the Mental Health/Substance Use Disorder Administrator's level of care guidelines or best practices as modified from time to time; or
- not clinically appropriate for the patient's mental illness, substance use disorder or condition based on generally accepted standards of medical practice and benchmarks.

---

[8] SPD Booklet at 85.
[9] *Id*. at 92.

COMPLAINT

- Mental Health Services as treatments for V-code conditions as listed within the current edition of the Diagnostic and Statistical Manual of the American Psychiatric Association;
- Mental Health Services as treatment for a primary diagnosis of insomnia other sleep disorders, sexual dysfunction disorders, feeding disorders, neurological disorders and other disorders with a known physical basis;
- treatments for the primary diagnoses of learning disabilities, conduct and impulse control disorders, personality disorders and paraphilias (sexual behavior that is considered deviant or abnormal);
- educational/behavioral services that are focused on primarily building skills and capabilities in communication, social interaction and learning;
- tuition for or services that are school-based for children and adolescents under the Individuals with Disabilities Education Act;
- learning, motor skills and primary communication disorders as defined in the current edition of the Diagnostic and Statistical Manual of the American Psychiatric Association;
- mental retardation as a primary diagnosis defined in the current edition of the Diagnostic and Statistical Manual of the American Psychiatric Association;
- L.A.A.M. (1-Alpha-Acetyl-Methadol), Cyclazocine, or their equivalents for drug addiction;
- any treatments or other specialized services designed for Autism Spectrum Disorder that are not backed by credible research demonstrating that the services or supplies have a measurable and beneficial health outcome and therefore considered experimental or investigational or unproven Services.[10]

34.    The treatment that J.C. received at Elements did not fall under any of the Policy's exclusions for mental health/substance use disorder services.

35.    The SPD Booklet does not define "wilderness therapy," was that term included with the Plan's specified excluded services.

### Background of J.C.'s medical issues and treatment

36.    At the times relevant hereto, J.C. had been diagnosed with various mental health and substance abuse disorders described in the DSM-5.

---

[10] SPD Booklet at 96-97.

37.    Elements, located in Huntington, Utah, is a 24/7 outdoor youth program that at all times relevant hereto was duly licensed by the state to provide intermediate outdoor behavioral health services to children and adolescents, as required by the governing Utah state regulations.

38.    At the recommendation of mental health professionals, J.C. was admitted to Elements on November 12, 2022, and discharged on February 5, 2023.

39.    J.C. benefited from the intensive mental health treatment received at Elements. Further details regarding J.C.'s treatment history are contained within the Administrative Record.

40.    At the time of J.C.'s treatment, there were no facilities in Anthem's network comparable to that recommended by J.C.'s providers at Elements.

41.    N.C. was forced to seek an out-of-network provider for J.C. to receive medically necessary outdoor behavioral health services.

42.    N.C. was unable to locate any providers offering outdoor behavioral health services in the network within a one-hundred-mile radius.

43.    After searching Anthem's network, N.C. could not locate any "Outdoor Behavioral Health" services that provided treatment similar to that those provided Elements which providers had recommended.

### Anthem's Denial EOBs

44.    Anthem sent various Explanation of Benefits ("EOBs") to Plaintiffs denying J.C.'s treatment at Elements.

45.     Ultimately, Anthem set EOBs denying payment for the entirety of J.C.'s treatment at Elements, totaling $59,770 from the date of J.C.'s admission in November 2022 to discharge in February 2023. The most consistent reason for the full denial of all of Plaintiffs' claims was an asserted lack of preapproval.

### *Plaintiffs' Level One Member Appeals*

46.     In a letter dated January 3, 2024 (the "Level One Member Appeal") signed by N.C., Plaintiffs requested a level one member appeal review of the services provided to J.C. by Elements. The Level One Member Appeal in its entirety is incorporated herein by reference.

47.     In the Level One Member Appeal, N.C. specified that they were appealing the denial of coverage for "Dates of Service: 11/12/2022 – 02/05/2023."[11]

48.     In the Level One Member Appeal, N.C. asserted that Anthem's denial of coverage for J.C.'s treatment at Elements because preapproval was not obtained was invalid.

49.     N.C. pointed out that the Plan stated that failing to obtain preapproval should have only resulted in a $500 reduction in coverage, not a full denial.

50.     N.C. further expressed concern that Anthem's denial of coverage for J.C.'s treatment was in violation of the Mental Health Parity and Addictions Equity Act of 2008 ("MHPAEA").

---

[11] Level One Member Appeal at 1.

51.     N.C. requested in the Level One Member Appeal that in reviewing the appeal, that Anthem perform a full, fair, and thorough review of the level one member appeal, and asked Anthem to uphold their rights under the Employee Retirement Income Security Act of 1974 ("ERISA").[12]

52.     Plaintiffs' Level One Member Appeal went unanswered by Anthem.

53.     In a letter dated June 3, 2024 (the "Second Level One Member Appeal"), N.C. remarked that they had previously submitted a level one member appeal in response to Anthem's denial of coverage of for J.C.'s treatment at Elements and requested a second level one member appeal review.[13]

54.     In the Second Level One Member Appeal, N.C. specified that they were appealing the denial of coverage for "Dates of Service: 11/12/2022 – 02/05/2023."[14]

55.     In the Second Level One Member Appeal, N.C. stated that they disagreed with Anthem's adverse determination of benefits, as "my plan's provisions clearly state that the penalty for failure to obtain preapproval is not a complete reduction in benefits."[15]

56.     N.C. pointed out that in the "Effect on benefits"[16] section of the Plan, regarding the penalty for when a pre-service review is not performed, it states:

> **The appropriate utilization reviews must be performed in accordance with this plan. When pre-service review is not performed as required, the**

---

[12] Level One Member Appeal at 1.
[13] Second Level One Member Appeal at 1.
[14] *Id.* at 1.
[15] *Id.*
[16] SPD Booklet at 40-41.

**benefits to which you would have been otherwise entitled will be subject to $500 reduction for non-network providers.**[17]

57.    N.C. pointed out that the Plan clearly stated that the maximum penalty for failure to obtain a pre-service review and thus, preapproval, is only $500.00, not the 100% penalty applied by Anthem.

58.    N.C. expressed concern that Anthem was in violation of their appeal rights under ERISA, and requested Anthem take into account all of the information provided as required by ERISA regulations.[18]

59.    N.C. also expressed concern that Anthem was potentially applying treatment limitations of the kind prohibited by the MPHAEA, and requested that in response to their appeal, Anthem have someone trained in the details of the Mental Health Parity and Addiction Equity Act of 2008 (MHPAEA) provide input in order to not only ensure that my plan is being administered in compliance with this federal law.[19]

60.    N.C. stated their position that that since Elements provided services that were less intensive than acute hospitalization and more intensive than outpatient therapy, Elements qualified as an intermediate behavioral health facility under the MHPAEA. They noted that the MHPAEA prohibited the Plan from imposing treatment limitations on behavioral health benefits that are more restrictive than those imposed on medical or

---

[17] *Id*. at 40.
[18] Second Level One Member Appeal at 2.
[19] *Id*.

COMPLAINT

surgical benefits in the same classifications, including by imposing more restrictive nonquantitative treatment limitations ("NQTLs").[20]

61.    N.C. identified ways in which the denial appeared violative of the MHPAEA:

**"A plan or issuer may not impose an NQTL with respect to mental health or substance use disorder benefits in any classification unless, under the terms of the plan as written and in operation, any processes, strategies, evidentiary standards, or other factors used in applying the NQTL to mental health or substance use disorder benefits in the classification are comparable to, and are applied no more stringently than, the processes, strategies, evidentiary standards, or other factors used in applying the limitation with respect to medical/surgical benefits in the same classification, except to the extent that recognized standards of care may permit a difference.**

Accordingly, the restrictions, requirements, and standards for administering behavioral health benefits cannot be more intensive than those for comparable medical or surgical services. In the aforementioned court ruling, Johnathan Z. v. Oxford, Judge Parrish explains that treatment limitations appear in two forms:

**Treatment limitations that violate the Parity Act may be found on the face of the Plan's terms or when the Plan is applied unequally in practice. In other words, "disparate treatment limitations that violate the Parity Act can be either facial (as written in the language or the processes of the plan) or as-applied (in operation via application of the plan)."**

The U.S. Department of Labor has produced a document for insurance consumers describing some Warning Signs that an insurer may be imposing unlawful NQTLs. The MHPAEA final rules also provide several examples of these NQTLs, which include:

**(H)    Restrictions based on geographic location, facility type, provider specialty, and other criteria that limit the scope or duration of benefits for services provided under the plan or coverage."[21]**

---

[20] *Id.*
[21] SPD Booklet at 9-10.

62.    N.C. further expressed concern that the lack of behavioral health providers available in Anthem's network may have violated a provision of the Patient Protection and Affordable Care Act (PPACA) establishing network adequacy standards, including that a health plan maintain a network that is sufficient in number and types of providers, including providers that specialize in mental health and substance abuse services, to assure that all services will be accessible without unreasonable delay.

63.    N.C. requested that Anthem engage in meaningful dialogue about these potential violations.

64.    N.C. further requested that Anthem's review of the appeal include conducting a comparative parity analysis to determine whether the Plan was being administered in compliance with the MHPAEA. N.C. specified that the request included both that Anthem conduct the analysis and that Anthem provide physical copies of any and all documentation used, as mandated by the MHPAEA.

65.    N.C. specified what kind of documentation they requested, stating:

In particular, I ask that my plan administrator provide me with details regarding: (1) the specific plan language regarding the above limitation and identify all of the medical/surgical and mental health and substance use disorder benefits to which it applies (or does not apply) in the relevant benefit classification; (2) the factors used in the development of the limitation; (3) the evidentiary standards used to evaluate the factors; (4) the methods and analysis used in the development of the above limitation; and (5) any evidence and documentation to establish that the limitation is applied no more stringently, as written and in operation, to mental health and substance use disorder benefits than to medical and surgical benefits.[22]

---

[22] Second Level One Member Appeal at 13.

66.    N.C. requested that, if the claims for J.C.'s treatment at Elements were not paid, certain plan- and MHPAEA related documents be provided:

> [P]lease provide me any clinical guidelines or medical necessity criteria utilized in your determination, as well as their medical or surgical equivalents so that I may conduct a parity analysis of my plan's mental health coverage. Please be advised that the criteria I am requesting includes the plan's mental health, substance use disorder, skilled nursing facility, subacute inpatient rehabilitation, hospice or other intermediate medical/surgical or mental health and substance use disorder criteria, regardless of whether the criteria were used to evaluate this claim. In addition, please provide me any reports or opinions provided to you from any physician or other professional. Finally, please provide me with the names, qualifications, and healthcare claim denial rates of all individuals who reviewed this claim or with whom you consulted about this claim.[23]

67.    N.C. further asked that in reviewing the appeal, Anthem assign a reviewer who was board certified in child and adolescent psychiatry and had experience treating adolescents with conditions faced by J.C. in an intermediate residential setting.

68.    The Second Level One Member Appeal letter provided additional information and attached hundreds of pages of supporting documentation showing that the treatment J.C. received at Elements was medically necessary.

69.    The Second Level One Member Appeal letter also attached hundreds of pages of documents from various sources relating to J.C.'s mental health and substance use issues and the treatment C.J. received for them.

---

[23] Second Level One Member Appeal at 14.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Anthem denies Plaintiffs' First and Second Level One Member Appeals*

70.     In a letter dated August 20, 2024 (the "Initial Denial Letter"), Anthem wrote to the Plaintiffs:

> We've received a request from [N.C.] for an appeal for claims 2023191480084, 2023191480769, 2023191480752 and 2023191480140.
>
> Your plan requires you to file an appeal within 180 calendar days from the date you get a decision from us that you don't agree with. Unfortunately, you didn't file your request in time, so we can't review it.

71.     Anthem's Initial Denial Letter erroneously did not take into account the first Level One Member Appeal Plaintiffs timely submitted on January 3, 2024, well within the 180-calendar day timeframe to file an appeal.

72.     Anthem then sent another letter dated November 22, 2024 ("Level One Denial Letter"). In that letter, Anthem did not assert any issue with the timeliness of Plaintiff's appeal, but again informed Plaintiffs that their Level One Member Appeal had been denied.

73.     The Level One Denial Letter was signed by "Chad H.," identified as "Behavioral Health Appeals Coordinator, Grievances and Appeals."

74.     Though Anthem's EOBs had stated that Anthem's ground for denial was that Plaintiffs' alleged failure to obtain pre-approval, Anthem changed positions in the Level One Denial Letter.  Anthem stated as follows:

> Dear [J.C.],
>
> I've reviewed your appeal. I've gone over everything and have decided to keep the previous coverage decision. Here's a detailed explanation.

**Your appeal**
You filed an appeal for the benefit denial of services rendered at Elements Wilderness Program from November 12, 2022. through February 5, 2023, because you would like the services covered under your benefit plan.

**The decision**
After a careful review of the appeal correspondence, Anthem Behavioral Health Utilization Management notes and your Experian Health and Welfare 2022 Benefits Summary Plan Description a decision was made to uphold the denial. Services at Elements Wilderness Program are not covered by your benefit plan. There are no benefits in your contract for wilderness therapy.

According to your January 1, 2022, Experian's Health, Welfare and Retirement Plans Benefits Summary Plan Description on page 75 under the heading Mental Health Services, it states:

Mental or Nervous Disorders includes covered services shown below for the medically necessary treatment of mental or nervous disorders, or to prevent the deterioration of chronic conditions.

Inpatient hospital services as stated in the "Hospital" provision of this section, services from a residential treatment center, and visits to a day treatment center.

Partial hospitalization, including intensive outpatient programs and visits to a day treatment center.

Partial hospitalization is covered as stated in the "Hospital" provision of this section, for outpatient services and supplies.

Physician visits during a covered inpatient stay.

Physician visits for outpatient psychotherapy or psychological testing for the treatment of mental or nervous disorders or substance abuse.

Behavioral health treatment for pervasive developmental disorder or autism. See "Applied Behavioral Analysis (ABA)" on page 76 for a description of the services that are covered. Note: You must obtain Utilization Review for all behavioral health treatment services for the treatment of pervasive developmental disorder or autism in order for these services to be covered.

COMPLAINT

The Mental Health/Substance Use Utilization Review determines coverage for the inpatient treatment. If an Inpatient Stay is required, it is covered on a Semi-private Room basis.reference [sic]."

> In the appeal correspondence it mentions Anthem is not in compliance with the Mental Health Parity and Addiction Equity Act of 2008 (MHPAEA). From our understanding, the health plan's determination is not a violation of the Parity Act. Anthem Behavioral Health Utilization Management completed a retroactive benefit review of the services request.

Your Explanation of Benefits (EOB) has details about your claim. If you don't have a copy of your EOB, you can get one by calling Member Services at the phone number on your ID card. You can also visit www.anthem.com for details about your EOB or claim. [24]

75.    The Level One Denial Letter did not engage with any of the information, arguments, or documentation provided in Plaintiffs' two level one appeals.

76.    The Level One Denial Letter provided none of the other information N.C. requested with regard to the denial of J.C.'s treatment.

77.    Likewise, in its Level One Denial Letter, Anthem provided none of the requested analysis, information, or documentation regarding the concerns N.C. cited in the Initial and Second Level One Member Appeal letters about Anthem's compliance with the MHPAEA, other than a blanket denial that Anthem had complied with the MHPAEA.

… … …

… … …

… … …

_____
[24] Level One Denial Letter at 1-2.

COMPLAINT

*Plaintiffs' Level Two Member Appeal*

78.    In a letter dated January 14, 2025 (the "Level Two Member Appeal"), N.C. made a level two member appeal to Anthem ("Level Two Member Appeal") disputing Anthem's determination to deny coverage for the treatment J.C. received at Elements.

79.    In the Level Two Member Appeal, N.C. noted that ERISA requires Anthem to take into account all of the information provided with the Initial and Second Level One Member Appeals, that the people Anthem assign to review the case be appropriately qualified, and that the identity of all reviewers be disclosed.

80.    In the Level Two Member Appeal, N.C. pointed out that they had requested Anthem provide clear evidence that the Plan was being administered in accordance with the MHPAEA by conducting a parity analysis, but that Anthem's response did not include this information or the plan documents, thereby depriving Plaintiffs of the opportunity to conduct an independent parity analysis.

81.    N.C. further asserted that Anthem had failed to meaningfully respond to the arguments and evidence presented in the Initial and Second Level One Member Appeals, depriving them of the opportunity to strengthen their case or engage in productive dialogue.

82.    N.C. again requested that Anthem's next reviewer fully and thoroughly review their case, including the level one appeal, and respond to all of the arguments and evidence presented in that appeal as required by ERISA.

83.     N.C. also expressed their belief that Anthem's reviewer was not appropriately qualified to review Plaintiffs' case and requested that the next reviewers have specific qualifications necessary to adequately and properly review the case.

84.     N.C. again requested that if Anthem continued to deny the claim that it send Plaintiffs a copy of all documents under which the Plan is operated, as well as any clinical guidelines or medical necessity criteria utilized in Anthem's determination as well as their medical or surgical equivalents so that Plaintiffs could conduct a parity analysis of the Plan's mental health coverage to evaluate whether the Plan was complaint with the MHPAEA.

### *Anthem Denies Plaintiffs' Level Two Appeal*

85.     In a letter dated March 12, 2025 (the "Level Two Denial Letter"), Anthem informed Plaintiffs that their Level Two Member Appeal had been denied.

86.     The Level Two Denial Letter was signed by "Darryl G.," identified as a "Behavioral Health Appeals Coordinator, Grievances and Appeals."

87.     In the Level Two Denial Letter, "Darryl G." stated as follows:

Dear [J.C.],

I've finished reviewing your second level appeal. I've gone over everything and have decided to keep the previous coverage decision. Here's a detailed explanation.

**Your appeal**
You filed a second level appeal for the claims payment denial of wilderness therapy services at Elements Wilderness Therapy from November 12, 2022, through February 5, 2023.

**The decision**

Your request for the adjustment of these claims has been denied. We reviewed these claims and determined that they have been processed appropriately and based on the terms of your plan. According to page 40 of your EXPERIAN INFORMATION SOLUTIONS, INC Evidence of Coverage document dated January 1, 2022, in the section title Effect on benefits, it states:

When pre-service review is performed and the admission, procedure or service is determined to be medically necessary and appropriate, benefits will be provided for the following:
-Home health Care (includes Home Infusion provided by Home Health Care agency)
-Home Infusion Therapy (provided by home infusion specialist)
-Visiting Nurses
-Private Duty Nursing (Home)
-Skilled Nursing Facility
-Inpatient and outpatient Hospice care
-Inpatient and outpatient Organ and Tissue Transplant as follows:
-For bone, skin or cornea transplants, if the physicians on the surgical team and the facility in which the transplant is to take place are approved for the transplant requested.
-For transplantation of heart, liver, lung, combination heart-lung, kidney, pancreas, simultaneous pancreas-kidney or bone marrow/stem cell and similar procedures, if the providers of the related preoperative and postoperative services are approved. Travel benefits only apply when the transplant will be performed at a Centers of Medical Excellent (CME) facility or a Blue Distinction Centers for Specialty Care (BDCSC) facility.
-Inpatient and outpatient Bone Marrow and Stem Cell Transplant
-Radiology services
-Air Ambulance
**-Acute Inpatient Admissions for Mental Health or Substance Abuse**
**-Transcranial Magnetic Stimulation (TMS)**
**-Residential Care for Mental Health or Substance Abuse**
**-Partial Hospitalization (PHP) for Mental Health or Substance Abuse**
**-Intensive Outpatient Therapy (IOP) for Mental Health or Substance Abuse**
-Applied Behavioral Analysis (ABA)
-Transgender services, including transgender travel expense, as specified under the "Transgender Services" provision of your medical benefits: medical care that is covered. You must be diagnosed with gender identity disorder or gender dysphoria by a physician.

The section listed above highlights that, pending medical necessity approval, these are the only healthcare settings in which the plan will provide benefits.

Additionally, on page 75 of your EXPERIAN INFORMATION SOLUTIONS, INC Evidence of Coverage document dated January 1, 2022, in the section titled Additional coverage details and limitations, it states:

*Mental or Nervous Disorders includes covered services shown below for the medically necessary treatment of mental or nervous disorders, or to prevent the deterioration of chronic conditions.*
*-Inpatient hospital services as stated in the "Hospital" provision of this section, services from a residential treatment center, and visits to a day treatment center.*
*-Partial hospitalization, including intensive outpatient programs and visits to a day treatment center.*
*-Partial hospitalization is covered as stated in the "Hospital" provision of this section, for outpatient services and supplies.*
*-Physician visits during a covered inpatient stay.*
*-Physician visits for outpatient psychotherapy or psychological testing for the treatment of mental or nervous disorders or substance abuse.*
*-Behavioral health treatment for pervasive developmental disorder or autism. See "Applied Behavioral Analysis (ABA)" on page 76 for a description of the services that are covered.*
*Note: You must obtain Utilization Review for all behavioral health treatment services for the treatment of pervasive developmental disorder or autism in order for these services to be covered.*

The section listed above highlights the covered services pertaining to mental or nervous disorders that the plan will provide benefits.

Since wilderness therapy, therapeutic camping overnight, or any version of this type of care is not listed as a covered benefit under your plan, the denial is upheld.

88.    Anthem sent Plaintiffs another letter dated March 19, 2025 nearly identical to the Level Two Denial Letter, informing Plaintiffs that their Level Two Member Appeal had been denied.

89.    The letter dated March 19, 2025 was signed by "Anthem Provider Services" and contained the same grounds for denial as described in the Level Two Denial Letter.

90.    All of Anthem's denials were inconsistent with the terms of the Plan for various reasons, including but not limited to the fact that Anthem incorrectly read the term "includes" in the Plan as a limiting, rather than expansive term, as well as the fact that J.C.'s treatment at Elements was a covered service under a reasonable reading of the Plan.

91.    As set forth above, Plaintiffs exhausted their pre-litigation appeal obligations under the terms of the Plan and ERISA.

92.    The denial by Anthem/the Plan of benefits solely and directly caused Plaintiffs to incur over $59,000 for J.C.'s treatment at Elements.

93.    After receiving the denial, litigation was Plaintiffs' only option to enforce their right to benefits owning under the Plan and seek reimbursement of expenses under the terms of the Plan (as written or as reformed or required by MHPAEA), and/or under the MHPAEA amendments to ERISA.

94.    Plaintiffs thereafter retained the undersigned to pursue their rights and remedies under ERISA.

95.    The remedies Plaintiffs seek herein are for the benefits due and pursuant to 29 U.S.C. § 1132(a)(1)(B), for appropriate equitable relief under 29 U.S.C. § 1132(a)(3) based on the Defendants' violation of the Mental Health Parity and Addiction Equity Act of 2008, pre-judgment interest, recoverable fees under 29 U.S.C. § 1132(g), and an award of costs and expenses under 29 U.S.C. § 1132(g) and other applicable law.

## FIRST CAUSE OF ACTION
### (Claim for Recovery of Benefits Under 29 U.S.C. § 1132(a)(1)(B))

96.     All allegations of this Complaint are incorporated here as though fully set forth herein.

97.     ERISA imposed higher-than-marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as Anthem, acting as agent of the Plan, to ""discharge [their] duties in respect to claims processing solely in the interests of the participants and beneficiaries" of the Plan. 29 U.S.C. § 1104(a)(1).

98.     Defendants wrongly excluded coverage for J.C.'s treatment at Elements as described herein in violation of the terms of the Plan.

99.     Defendants' denial is inconsistent with the Plan, not based upon J.C.'s actual condition or treatment, and not based upon a reasonable interpretation of Plan language.

100.    The actions of Defendants in denying payment for J.C.'s treatment are a violation of the terms of the Plan, as written and/or as reformed as required or permitted under ERISA.

101.    Relief sought for their First Cause of Action is an order awarding benefits under the Plan.

## SECOND CAUSE OF ACTION
### (Failure to provide full and fair review (29 U.S.C. § 1132(a)(3))

102.    All allegations of this Complaint are incorporated here as though fully set forth herein.

COMPLAINT

103.   This Second Cause of Action is brought alternative and conditionally. Plaintiff seeks relief under the Second Cause of Action only in the event that relief is not obtained under the First Cause of Action.

104.   ERISA underscores the particular importance of accurate claims processing and evaluation by requiring that administrators provide a "full and fair review" of claim denials and to engage in a meaningful dialogue with Plaintiff in the pre-litigation appeal process.

105.   As described above, Anthem/the Plan's Initial Denial Letter,  Level One Denial Letter, and Level Two Denial Letter demonstrate the absence of a meaningful analysis of Plaintiffs' appeal. Among other things, Anthem/the Plan did not engage with or respond to J.C.'s medical and substance use history, the reasons for J.C.'s admission to Elements, the issues and evidence presented in the appeal, or the arguments or concerns raised during the appeal process.

106.   Defendants breached their fiduciary duties to Plaintiffs when they failed to comply with their obligations under 29 U.S.C. § 1104 and 29 U.S.C. § 1133 to act solely in J.C.'s interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries, to produce copies of relevant documents and information to claimants upon request, and to provide a full and fair review of J.C.'s claims.

107.   The relief sought by Plaintiffs in this Second Cause of Action is a remand for a full and fair review, limited to the rationale conveyed by Defendants to Plaintiffs during the administrative process.

## THIRD CAUSE OF ACTION
### (Violation of the Mental Health Parity and Addiction Equity Act (29 U.S.C. § 1132(a)(3))

108.   All allegations of this Complaint are incorporated here as though fully set forth herein.

109.   The MHPAEA is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and the MHPAEA. The obligation to comply with both ERISA and the MHPAEA is part of Defendants' fiduciary duties.

110.   Generally speaking, the the MHPAEA requires ERISA plans to provide no less generous coverage for treatment of mental health and substance use disorders than they provide for treatment of medical/surgical disorders.

111.   The MHPAEA prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical/surgical benefits and makes illegal separate treatment limitations that are applicable only to mental health or substance use disorder benefits. 29 U.S.C. § 1185a(a)(3)(A)(ii).

112.   Impermissible nonquantitative treatment limitations (NQTLs) under the MHPAEA include, but are not limited to, restrictions based on geographic location, facility type, provider specialty, or other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. § 2590.712(c)(4)(ii).

113.   Comparable benefits offered by the Plan for medical/surgical treatment analogous to the benefits the Plan excluded for J.C.'s treatment include subacute inpatient treatment settings such as hospice care.

114.   The Plan does not exclude coverage for medically necessary care of medical/surgical conditions in the manner Defendants excluded coverage of treatment for J.C. at Elements.

115.   Upon information and belief, and as described above, Defendants' denial of coverage also violated the MHPAEA in application or effect. Because Defendants declined to produce the requested documents and materials requested by Plaintiffs, further discovery is needed to resolve this aspect of Plaintiffs' claims.

116.   Defendants are in violation of 29 C.F.R. § 2590.712(c)(4)(i) because the terms of the Plan, as written or in operation, use processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and more stringently applied to, the processes, strategies, standards, or other factors used to limit coverage for medical/surgical treatment in the same classification.

117.   In the Second Level One Member Appeal, and Level Two Member Appeal, Plaintiffs expressly requested Anthem to perform a MHPAEA analysis of the Plan. Plaintiffs expressed serious concern that Anthem was violating the statute and asked for a response using specific and direct examples. Anthem failed or declined to do this and failed or declined to even address the MHPAEA in its Level Two Denial Letter.

## FOURTH CAUSE OF ACTION
### (Failure to provide documents (29 U.S.C. §1185a(7) and 29 U.S.C. §1024(b)(4))

118.   All allegations of this Complaint are incorporated as though fully set forth herein.

119.   As described above and in the administrative record, N.C. requested copies of documents relating to Defendants' application of medical necessity criteria for both medical/surgical benefits and mental health and substance use disorder benefits, including the processes, strategies, standards, and other factors used to apply a nonquantitative treatment limitation with respect to medical / surgical benefits and mental health or substance use disorder benefits under the Plan.

120.   29 CFR §2590.712(d)(3) specifies that documents requested pursuant to that rule be provided within 30 days.

121.   N.C. also requested copies of all documents under which the Plan is operated, but the requested documents were not provided.

122.   The request was made to entities who are both delegees and agents of the Plan Administrator with respect to participant communication and provision of documents.

123.   The relief sought in this Fourth Cause of Action is for statutory and regulatory penalties of $110 per day for the documents not produced, and associated attorney fees.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiffs seek relief as follows:

1. Judgment in the total amount owed for J.C.'s treatment at Elements;

2.  Pre- and post-judgment interest to the date of payment;

3.  Appropriate equitable relief under 29 U.S.C. § 1132(a)(3) including the following:

    a)  A declaration that the actions of Defendants violate the MHPAEA;

    b)  An injunction ordering Defendants to cease violating the MHPAEA and requiring compliance with the statute;

    c)  An Order reforming the terms of the Plan and the medical necessity criteria utilized by Defendants to interpret and apply the terms of the Plan to ensure compliance with the MHPAEA;

    d)  An Order requiring disgorgement of funds obtained or retained by Defendants as a result of their violations of the MHPAEA;

    e)  An Order requiring an accounting by Defendants of the funds wrongly withheld by each Defendant from participants and beneficiaries of the Plan as a result of Defendants' violations of the MHPAEA;

    f)  An Order based on the equitable remedy of surcharge requiring Defendants to provide payment to Plaintiffs as make-whole relief for their loss;

    g)  An Order equitably estopping Defendants from denying Plaintiffs' claims in violation of the MHPAEA; and

    h)  An Order providing restitution from Defendants to Plaintiffs for their loss arising out of Defendants' violations of the MHPAEA and unjust enrichment.

4. Recoverable pre- and post-judgment interest, fees, and costs incurred pursuant to 29 U.S.C. § 1132(g); and

5. For such further relief as the Court deems just and proper.


DATED:      November 21, 2025            Respectfully submitted,

WEEKS NELSON

*/s/ Gregory K. Nelson*
Gregory K. Nelson

CHRISTENSEN & JENSEN, P.C.

*/s/ John M. Mejia*
John M. Mejia (*pro hac* application pending)

*Attorneys for Plaintiffs*